UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-2387(DSD/DTS)

Ally Bank,

       Plaintiff,

v.                                                              **ORDER**

Lenox Financial Mortgage Corporation,

       Defendant.


Thomas M. Schehr, Esq., Jared D. Kemper, Esq. and Dykema Gossett, PLLC, 4000 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN, counsel for plaintiff.

W. Anders Folk, Esq., Sharon R. Markowitz, Esq. and Stinson Leonard Street LLP, 150 South 5th Street, Suite 2300, Minneapolis, MN, counsel for defendant.


This matter is before the court upon the motion to dismiss by defendant Lenox Financial Mortgage Corporation. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is denied.


**BACKGROUND**

This contract dispute arises out of the sale of ten mortgage loans by Lenox to plaintiff Ally Bank.[1] Am. Compl. ¶ 1. Lenox and Ally entered into two agreements, the 2004 contract and the 2008 contract, under which Lenox sold Ally residential mortgage loans. Id. Nine of the loans were sold pursuant to the 2004 contract, and

---

[1] Ally Bank was previously known as GMAC Bank.

one loan was sold under the 2008 contract.  See id. ¶¶ 28, 47, 65, 84, 103, 122, 141, 160, 178, 197.   Both of the agreements incorporated the terms of the GMAC Bank Correspondent Lending Manual, which contained representations and warranties concerning the nature and quality of the loans.[2]  Id. ¶¶ 12-13.   Under the terms of the correspondent manual, Lenox represented, among other things, that any loan sold to Ally would meet Ally's, Fannie Mae's, and Freddie Mac's underwriting requirements and would be based on proper appraisals.  Id. ¶¶ 14-16; id. Ex. 3, Correspondent Manual § XIII.b.   The correspondent manual enumerated specific unacceptable appraisal practices.  See Am. Compl. ¶ 16; id. Ex. 3 § VIII(9-1).   Under the terms of the agreement, "[Ally] may give [Lenox] written notice as to any loan purchased ..., which [Ally] discovers and deems, in its sole discretion, to fail to conform with each and every requirement, representation, and warranty of the Correspondent Agreement and the Correspondent Manual."  Am. Compl. Ex. 3 § XIV.a.  On receipt of such notice, "[Lenox] shall have ten (10) days ... to cure any defect.  If any such defect is not cured within ten (10) days, [Lenox] shall repurchase the loan .... Any repurchase must occur within ... fifteen (15) days of the notice of defect ...."  Id.  Lenox also agreed to indemnify Ally for all losses resulting from a defective loan.  See id. § XIV.b.

--------

[2]  The correspondent manual was amended from time to time, but Ally pleads that the versions incorporated into the 2004 and 2008 contracts were substantively the same.  Id. ¶ 13 n.1.

Ally sold the loans to Fannie Mae and Freddie Mac, which later demanded that Ally repurchase the loans for failure to meet their underwriting requirements.[3]  Am. Compl. ¶¶ 28-214.  Ally alleges that, among other defects, the loans failed to disclose material liabilities and were based on unacceptable appraisal practices. Id.  For example, according to Ally, the Holland loan was based on an appraisal that "failed to disclose the property's location near a busy street, relied upon a comparable sale that could not be located, [and] failed to consider that property values in the surrounding neighborhood had declined 11% in the past year."  Id. ¶ 31.

From 2012-2013, Ally either repurchased the loans from Fannie Mae or Freddie Mac or indemnified their losses.  Id. ¶¶ 28-214. Ally sent written demands to Lenox to repurchase the defective loans or for indemnification.[4]  Id. ¶ 24.  On July 11, 2016, Ally filed suit against Lenox and, on October 11, 2016, filed an amended complaint.  Ally asserts claims for breach of contract and indemnification.  Lenox now moves to dismiss the complaint.

---

[3]  Fannie Mae's and Freddie Mac's repurchase demands were made between 2012-2013.

[4]  Ally sent separate repurchase demands to Lenox for each loan between 2012-2013.

**DISCUSSION**

**I. Motion to Dismiss**

    **A.   Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, the court properly

considers the 2004 and 2008 contracts and the correspondent manual.

## II. Personal Jurisdiction

Lenox first moves to dismiss the claims based on the 2004 contract for lack of personal jurisdiction.[5]  The party seeking federal jurisdiction "has the burden of establishing that jurisdiction exists, and the burden may not be shifted to the party challenging jurisdiction."  Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 311 (8th Cir. 1982) (internal quotation marks and citation omitted).  For motions to dismiss for lack of personal jurisdiction, "in which no evidentiary hearing is held, the plaintiff must present only a prima facie showing of ... personal jurisdiction." Delong Equip. Co. v. Wash. Mills Abrasive, 840 F.2d 843, 845 (11th Cir. 1988).  Moreover, "all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor."  Hoffritz For Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).

Lenox argues that the court has neither general nor specific personal jurisdiction over it because it lacks sufficient contacts with Minnesota.  The court need not assess Lenox's contacts with the State, however, because Lenox consented to jurisdiction by registering an agent to receive service of process in Minnesota.

---

[5]  Lenox does not challenge the court's jurisdiction over the 2008 contract claim in which Lenox consented to jurisdiction in Minnesota.

Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1199 (8th Cir. 1990).  "The whole purpose of requiring designation of an agent for service is to make a non-resident suable in the local courts.  The effect of such a designation can be limited to claims arising out of in-state activities and some statutes are so limited, but the Minnesota law contains no such limitation."  Id. (construing Minn. Stat. § 303.13, subd. 1(1)).[6]  Moreover, appointing an agent for service of process "gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state.  Such consent is a valid basis of personal  jurisdiction,  and  resort  to  minimum-contacts  or due-process analysis to justify the jurisdiction is unnecessary." Id. at 1200.

Lenox contends that Knowlton is inapplicable here because, in that case, the plaintiff was a Minnesota resident suing a foreign corporation, whereas Ally is not a Minnesota resident.  See id. at 1197-98.  The court is not persuaded that this distinction is material.  The Knowlton court did not consider the plaintiff's residency in reaching its holding, but instead focused solely on the fact that the foreign corporation had a registered agent in Minnesota.  See id. at 1199-1200.  Knowlton, therefore, supports a finding that Lenox consented to suit in Minnesota by registering an

---

[6]  Minn. Stat. § 303.13 states that "[a] foreign corporation shall be subject to service of process ... (1) based on its registered agent; or (2) as provided in section 5.25."

agent for service of process.

Lenox next argues that Knowlton should be limited in light of Daimler AG v. Bauman, 134. S. Ct. 746 (2014).  In Daimler, the Supreme Court declined to "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business" because it would not permit defendants to "structure their primary conduct with some minimum assurance as to where that conduct will ... render them liable." Id. at 760-62 (internal quotation marks and citation omitted).  Daimler, however, is inapplicable here.  The Daimler court addressed the limits of general jurisdiction over a foreign corporation, not the limits of a defendant's capacity to consent to personal jurisdiction. See Perrigo Co. v. Merial Ltd., No. 8:14-403, 2015 WL 1538088, at *7 (D. Neb. Apr. 7, 2015) ("[Daimler] does nothing to upset well-settled law regarding what acts may operate to imply consent.").  Therefore, the court remains bound by Knowlton.

Finally, Lenox, relying on Davis v. Farmers' Co-Op. Equity Co., 262 U.S. 312 (1923), argues that if Minn. Stat. § 303.13 broadly subjects foreign corporations to suit by non-Minnesota residents, the court should find that it violates the Commerce Clause.  In Davis, the Supreme Court held that a Minnesota statute that subjected any "foreign corporation having an agent in [Minnesota] for the solicitation of freight and passenger traffic"

7

to suit in Minnesota violated the Commerce Clause. <u>Id.</u> at 313-16.
But <u>Davis</u> is limited to its facts. Further, Lenox provides no
analysis as to whether or how § 303.13 places an unnecessary burden
on interstate commerce such that it violates the Commerce Clause.
<u>See</u> <u>Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.</u>, 476
U.S. 573, 579 (1986) ("When ... a statute has only indirect effects
on interstate commerce and regulated evenhandedly, we have examined
whether the State's interest is legitimate and whether the burden
on interstate commerce clearly exceeds the local benefits."). The
court will not blindly apply <u>Davis</u> under these circumstances. As
a result, the court has personal jurisdiction over Lenox.

**III. Venue**

Lenox also argues that venue is improper. Because venue is
proper where personal jurisdiction exists, venue is necessarily
proper in Minnesota. <u>Dakota Indus., Inc. v. Dakota Sportswear,
Inc.</u>, 946 F.2d 1384, 1392 (8th Cir. 1991) (citing 28
U.S.C. § 1391(b)).

**IV.  Statute of Limitations**

Lenox next contends that the claims relating to the Raetchi
loan sold under the 2008 contract are time-barred. The parties do
not dispute that the 2008 contract adopted Minnesota's statute of
limitations, which requires that a breach of contract action be
commenced within six years of its accrual. Minn. Stat.
§ 541.05(1). A cause of action accrues - and the statute of

limitations begins to run - "at the time of the alleged breach."

Jacobson v. Bd. of Trs. of the Teachers Ret. Ass'n, 627 N.W.2d 106,

110 (Minn. Ct. App. 2001) (citing Penderson v. Am. Lutheran Church,

404 N.W.2d 887, 889 (Minn. Ct. App. 1987)).

When a claim is based on a breach of representations and

warranties, the claim accrues at the time of sale, even when the

plaintiff was not aware of the breach.   Residential Funding v.

Mortg. Outlet, Inc., No. 13-3447, 2014 WL 4954645, at *2 (D. Minn.

Oct. 1, 2014); Residential Funding Co. v. Embrace Home Loans, Inc.,

27 F. Supp. 3d 980, 983 (D. Minn. 2014).   Because Lenox sold the

Raetchi loan to Ally on December 29, 2009, Ally's breach of

contract claim would be time-barred if it was based on a breach of

a representation or warranty.   But Ally's claim is not based on

such a breach - it is based on a breach of Lenox's obligation to

repurchase any defective loans or indemnify Ally.   See Am. Compl.

¶¶ 216-217 ("Lenox breached the Contract by failing to repurchase

the Loans or make Ally Bank whole following receipt of demands.").

Lenox, citing New York law, argues that a breach of a

repurchase provision cannot serve as an independent breach of

contract.   See Ace Sec. Corp. Home Equity Loan Tr. v DB Structured

Prods., Inc., 5 F. Supp. 3d 543, 552 (S.D.N.Y. 2014) ("New York law

... does not recognize pre-suit remedial provisions as constituting

separate promises which can serve as the basis for independent

causes of action.") (alteration in original) (internal quotation

marks and citations omitted).   There is, however, a split of authority as whether the breach of a remedial provision is constitutes a separate breach.   See, e.g., <u>Sun Tr. Mortg., Inc. v. Sharpe Mortg. Lending Servs. of Ga., Inc.</u>, No. 3:11CV576, 2011 WL 6178221, at *5 (E.D. Va. Dec. 12, 2011) ("[A] loan sellers' failure to repurchase non-conforming loans upon demand as required by contract is an independent breach of contract ....") (internal quotation marks and citation omitted); <u>Lehman Bros. Holdings, Inc. v. Key Fin. Corp.</u>, 8:09-CV-6233-T-17EAJ, 2011 WL 1296731, at *11 (M.D. Fla. Mar. 31, 2011) (same).   It appears that Minnesota courts have not yet addressed this question.   In the absence of any controlling law to the contrary, the court finds that Ally has pleaded a timely claim that Lenox breached the repurchase provision of their agreement.   See <u>MSK EyEs Ltd. v. Wells Fargo Bank, N.A.</u>, 546 F.3d 533, 540 (8th Cir. 2008) (holding that in order establish a breach of contract claim under Minnesota law, a plaintiff must show formation of a contract, performance of any conditions precedent, a material breach by the defendant, and damages).

## V.   Failure to State a Claim

Lenox   contends   that   Ally's   breach   of   contract   and indemnification claims, as to eight of the nine loans under the 2004 contract, must be dismissed because Ally does not allege that Lenox intentionally and knowingly misrepresented the value of the

loans' underlying property.[7]  As already discussed, Ally's claim is based on the theory that Lenox breached the repurchase provision of the contract, not on a breach of warranty.  Even if Ally's claim were based on a breach of warranty, Lenox's argument fails.

Lenox argues that in order for an opinion of appraised value to give rise to a breach of contract or indemnification claim, a plaintiff must plead that the defendant intentionally and knowingly lied about the appraised value.  But Lenox fails to cite any legal authority establishing that intent is ever a requirement for a breach of contract or indemnification claim.  Unless the parties have contracted otherwise, the law does not impose an intent requirement for a breach of contract claim.

In addition to its lack of relevant legal authority, Lenox fails to point to any contractual provision that limits a breach of the representations and warranties to those instances in which Lenox intentionally provided incorrect appraisals.  Indeed, the correspondent manual appears to give Ally the right, in its "sole discretion," to declare a breach.  See Am. Compl. Ex. 3 § XIV.a. There is no requirement that Ally first determine whether Lenox intentionally provided erroneous appraisals.[8]

---

[7]  The eight loans are the Holland, Scott, Sumner (#1), Sumner (#2), Sumner (#3), Sumner (#4), Sumner (#5), and Williams loans. See ECF No. 33, at 19.  Lenox does not argue that Ally fails to state a claim as to either the Raetchi or Welch loans.

[8]  Lenox asserts, without citation, that the "sole discretion" language was not used in the 2004 contract or correspondent manual.

Lenox argues that the "sole discretion" language only applies to Ally's right to demand repurchase and not its ability to declare a breach because it is located in the repurchase provision.  The "sole discretion" language, however, refers to Ally's right to declare that the loans "fail[ed] to conform with each and every requirement, representation and warranty of the Correspondent Agreement."  <u>Id.</u>

Ally has adequately pleaded that the "sole discretion" language applies to its right to declare a breach, and its position is supported by the correspondent manual's language.  <u>See</u> Am. Compl. ¶ 18; <u>id.</u> Ex. 3 § XIV.a.  To the extent Lenox offers a differing interpretation, the court will not resolve the dispute on a motion to dismiss.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion to dismiss [ECF No. 26] is denied.

Dated: March 2, 2017

s/David S. Doty

David S. Doty, Judge
United States District Court

---

Although the correspondent manual was amended from time to time, Ally pleads that the versions incorporated into the 2004 and 2008 contracts were substantively the same.  <u>Id.</u> ¶ 13 n.1.  To the extent Lenox's argument creates a factual issue, it cannot be resolved on a motion to dismiss.