UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-2387(DSD/DTS)

Ally Bank,

        Plaintiff,

v.                                                      **ORDER**

Lenox Financial Mortgage Corporation,

        Defendant.

    Thomas M. Schehr, Esq., Kristina Kaluza, Esq. and Dykema Gossett, PLLC, 4000 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN, counsel for plaintiff.

    Sharon R. Markowitz, Esq. and Stinson Leonard Street LLP, 150 South 5th Street, Suite 2300, Minneapolis, MN, counsel for defendant.

This matter is before the court upon the motion for summary judgment by plaintiff Ally Bank. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This contract dispute arises out of the sale of ten mortgage loans by defendant Lenox Financial Mortgage Corporation to Ally.[1] Lenox sold nine loans - the Holland, Scott, Welch, Williams, and five Sumner loans[2] - to Ally pursuant to the Correspondent Agreement, dated February 4, 2004, and one loan - the Raetchi loan

---

[1] Ally Bank was previously known as GMAC Bank.

[2] The loans are identified by the last name of the borrower.

- pursuant to a Client Contract, dated July 21, 2008.  <u>See</u> Ellis Decl. Ex. 3, Correspondent Agreement; <u>id.</u> Ex. 4, Client Contract. Under the Correspondent Agreement, Lenox obtained the right to sell mortgage loans to Ally subject to the terms of the GMAC Bank Correspondent Lending Manual (Correspondent Manual). Correspondent Agreement, Recital D.  The Correspondent Manual was revised from time to time, but the substantive provisions remained the same. <u>See, e.g.</u>, Hughes Decl. Exs. 1, 5, 9, 13 (Section VIII of the Correspondent Manual for the Holland, Scott, Welch, and Williams loans).  As discussed below, Lenox disputes that Ally can prove that the provisions remained the same for the five Sumner loans because Ally is not able to produce the version of the manual that applied to those loans.  Under the Client Contract, Lenox sold loans to Ally subject to the terms of the Client Guide, which is substantively similar to the terms in the Correspondent Manual. <u>See</u> Ellis Decl. Ex. 4, Client Contract, ¶¶ 1, 3.

Under the terms of the Correspondent Manual and Client Guide, Lenox agreed, among other things, that the mortgages sold to Ally would meet Fannie Mae's and Freddie Mac's underwriting requirements and would not be based on improper appraisal practices as defined in the agreement.  Hughes Decl. Exs. 1-2, 5-6, 9-10, 13-14, Correspondent Manual, §§ VIII(9-1), XIII.a(9), XIII.b(38), XIII.b(2)-(3); <u>id.</u> Ex. 17, Client Guide, Ch. 1C, § C102.  Further, Ally could, in its "sole discretion" declare a breach on any loan

that Ally deemed "to fail to conform with each an every requirement, representation and warranty of the Correspondent Agreement and the Correspondent Manual." Id. Exs. 3, 7, 11, 15, Correspondent Manual, § XIV(a); id. Ex. 17, Client Guide, Ch. 1A, §§ A100D, A100E. Lenox was required to repurchase the loan, or indemnify Ally for any losses, if it failed to cure any loan defects within ten days of receiving written notice from Ally. Id. Exs. 3, 7, 11, 15, Correspondent Manual, §§ XVI(a)-(b); id. Ex. 17, Client Guide, Ch. 1D, §§ D102A, D103.

Ally sold the Holland, Scott, Welch, Williams, and Raetchi loans to Fannie Mae and the five Sumner loans to Freddie Mac, but both Fannie Mae and Freddie Mac later made repurchase and indemnification demands of Ally because the loans did not meet their underwriting requirements. Ellis Decl. Exs. 6, 9, 12, 16, 23-27, 30. Ally notified Lenox of the repurchase and indemnification demands and requested information to rebut Fannie Mae's and Freddie Mac's conclusions. Id. It is undisputed that Lenox provided no new information to Ally. From 2012-2013, Ally either repurchased the loans or indemnified Fannie Mae's and Freddie Mac's losses. Hughes Decl. ¶¶ 26-27. Ally then made repurchase and indemnification demands of Lenox pursuant to the Correspondent Manual and Client Guide, but Lenox refused. Ellis Decl. Exs. 7, 10, 14, 17, 28, 31. On October 11, 2016, Ally filed an amended complaint, asserting claims of breach of contract and

3

indemnification against Lenox. Ally now moves for summary judgment.

## DISCUSSION

**I.   Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient ...."). 

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the

court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II.   The Holland, Scott, Welch, Williams, and Raetchi Loans**

Lenox does not oppose summary judgment on the Holland, Scott, Welch, Williams, and Raetchi loans, nor does it challenge Ally's calculation of damages on these loans. As a result, the court grants Ally's motion for summary judgment as to these loans. Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 734 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

**III. The Five Sumner Loans**

Lenox opposes summary judgment on the five Sumner loans because Ally is unable to produce the September 2007 version of the Correspondent Manual that applied to those loans. Ally is only able to produce the October 2007 version, which was in effect after the five Sumner loans were sold. Lenox argues that because Ally cannot show what the actual terms of the contract were at the time of sale, it cannot prove that Lenox breached the agreement. The court is not persuaded.

First, Lenox points to no evidence in the record indicating that the fundamental terms of the contractual relationship between Ally and Lenox changed at any time. Indeed, Lenox's corporate representative testified that she had no reason to believe that the

5

versions of the Correspondent Manual and Client Guide produced in discovery did not apply to all ten loans at issue. Harker Dep. at 43:14-18.

Second, the record establishes that the October 2007 Correspondent Manual contains identical language to the September 2007 version. A review of the October 2007 Correspondent Manual shows the revision date of each chapter. See Ellis Decl. II Ex. 1, Hughes Dep. at 51:3-53:9. The key provisions at issue, namely the Warranties and Covenants, the Repurchase and Indemnity, and the Eligible Mortgage Loans Requirements provisions, all indicate that they were revised in August 2007, July 2007, and March 2007 respectively, that is, before September 2007. See Hughes Decl. Exs. 10, 11, 12. This uncontradicted evidence establishes that the key terms of the September 2007 Correspondent Manual are identical to the October 2007 version. Additionally, the underwriting requirements chapter shows no revision date, which according to uncontradicted testimony, means that the chapter had not been revised. See Hughes Dep. at 51:14-19, 53:5-15. Because the court can ascertain from the uncontradicted record the terms of the September 2007 Correspondent Manual, Lenox's argument fails.

Lenox also argues that the missing September 2007 version of the Correspondent Manual renders the contract ambiguous, thereby requiring a jury trial because the contract is governed by Pennsylvania law. But in order for a contract to be ambiguous

6

there must be more than one reasonable interpretation for a jury to decide between. See Windows v. Erie Ins. Exch., 161 A.3d 953, 957 (Pa. Super. Ct. 2017) (internal quotation marks and citation omitted) ("A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."). Here, Lenox has failed to point to anything in the record that would suggest that the September 2007 version of the Correspondent Manual is different from the October 2007 version. Even assuming that the absence of a contract renders its terms ambiguous, the court may rely on parol evidence "to explain or clarify or resolve the ambiguity." Id. at 958 (internal quotation marks and citation omitted). "[T]he resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact." Id. (internal quotation marks and citation omitted). Here, the court relies on the October 2007 Correspondent Manual in resolving any ambiguity created by the absence of the September 2007 version, and Lenox has failed to offer any conflicting parol evidence. Therefore, there is no genuine issue of material fact for a jury to resolve. As a result, the court must grant summary judgment as to the five Sumner loans.[3]

---

[3] Lenox's argument that proof of a knowing and intentional misrepresentation is essential to Ally's breach of contract claim presumes that the Correspondent Manual, which allows Ally to declare a breach in its sole discretion, does not apply to these loans. Because the Correspondent Manual does apply, however, the

**III. Damages**

Lenox does not oppose Ally's calculation of damages or that Ally is entitled to recover reasonable attorney's fees pursuant to the terms of the contract. The record establishes that Ally's damages amount to $1,361,891.74 plus, as of December 7, 2017, prejudgment interest in the amount of $410,810.38.[4] See Hughes Decl. ¶¶ 26-27; id. Exs. 19-34. Pursuant to both the Correspondent Manual and Client Guide, Ally is also entitled to reasonable attorney's fees. See Hughes Decl. Exs. 3, 7, 11, 15, Correspondent Manual, § XIV.b; id. Ex. 17, Client Guide Ch. 1D, § D103.

---

argument fails. In any case, the court already rejected this line of argument in denying Lenox's motion to dismiss. See Ally Bank v. Lenox Fin. Mortg. Corp., No. 16-2387, 2017 WL 830391, at *3 (D. Minn. Mar. 2, 2017) ("[L]enox fails to cite any legal authority establishing that intent is ever a requirement for a breach of contract or indemnification claim. Unless the parties have contracted otherwise, the law does not impose an intent requirement for a breach of contract claim.").

[4] The Holland, Scott, Welch, Williams, and five Sumner loans were sold pursuant to the Correspondent Agreement and are governed by the laws of Pennsylvania. Ellis Decl. Ex. 3, Correspondent Agreement § 20. Pennsylvania establishes a prejudgment interest rate of six-percent per annum. 41 Pa. Stat. and Cons. Stat. § 202. The Raetchi loan is governed by the Client Contract and Minnesota law. Ellis Decl. Ex. 4, Client Contract ¶ 12. Minnesota law also establishes a prejudgment interest rate of six-percent per annum. Minn. Stat. § 334.01.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's motion for summary judgment [ECF No. 59] is granted;

2.  Judgment shall be entered in favor of Ally Bank following a determination of the amount of interest, costs, and attorney's fees;

3.  Ally shall submit to the court a calculation of interest, costs, and attorney's fees within thirty days of this order; and

4.  Lenox shall file a reply or a notice of no reply within fourteen days of Ally's submission.


Dated: January 10, 2018

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court